Good morning. My name is Jeremy Yellen, and it's my honor to represent Andrew Rice today. Andrew Rice was charged with accessing with intent to view child pornography. Because he was charged with that offense, we assert that the offense is a specific intent crime. Because it's a specific intent crime, we believe that Mr. Rice should have been entitled to argue the notion of diminished capacity. We think it's clear from the record below that the United States, at least for the most part, agrees with the statutory language of the statute and of our notion. Instead of addressing that, the United States is now claiming on appeal that what was discussed below in some general fashion Oh, I'm sorry. I'd like to reserve two minutes. I neglected to say that. Yeah, but you'll have to help keep track of your own time because that's the whole thing. Super. I'll do so. What was discussed generally below was, upon inquiry by Judge Haddon, was what would a person, what do I expect Mr. Remus to testify to? But that was not the issue that Judge Haddon had to deal with, and he stated so with specificity. And because of that, we believe that it is clear that diminished capacity is available, and Mr. Rice was severely prejudiced by not being able to present that at the trial of this matter. Well, I've always been confused about whether the intent to do something, if it is specific intent, is an element, or whether the diminished capacity is a defense. It is confusing. I was reading the case, I was reading Frisbee last night again, and I was reading Gloom. I was hoping you could straighten us out on that. I think the difference is, from my reading of it, Frisbee and Gold, the Napolat case, was essentially that diminished capacity is available not to excuse the charge, but to negate an element. And the element that we're trying to negate, or we were trying to negate, was the intent element. Because the knowing aspect of it, and the U.S. discusses it a little bit in their brief, the knowing part of this is, do you do something by mistake, do you do something through inadvertence? So here Mr. Rice conceded he did hit buttons, he did put in search terms. That would constitute looking for child porn. But then the next question is, did he intend to access it? And it was our view, because of his service to the country, because he suffered PTSD as a result of that service, he should have been able to explain that he did not intend to view the child porn. He intended to get this adrenaline fix. That's essentially what we were trying to establish. What's the difference? The difference between? Between viewing porn and trying to get a high. Well, because if you're... Is that why people view porn? Well, as Kelly Remus discussed, when you, at least some service members, they come back, they suffer from PTSD, and they need an adrenaline fix. And so when they need this adrenaline fix, this manifests itself in various forms. Driving motorcycles very quickly. So here Mr. Rice was seeking the adrenaline fix, not so much, and not the child porn itself, because his record, his history is he's not that way. He had a psychosexual evaluation. He has no criminal history whatsoever in this regard. So the point is we wanted to be able to present that he was seeking an adrenaline fix. Who would make this determination? The jury? Well, that's it. We think that the district court could, as the gatekeeper, make that determination initially. And I think what the cases talk about, twine also, is that the district court needs to do a careful analysis before it goes to a jury. That didn't occur here at all. So at a minimum, the district court needs to make that analysis so that there can be a record. Because here, Judge Haddon simply wanted to look at the issue, is this specific intent or general intent crime? And, of course, he fell on the side of it being a general intent crime. But to follow Judge Schroeder's question to you, if, in fact, intent is an element of the offense, isn't a defendant entitled to present any evidence that would cast doubt on the element itself or whether or not the government has proved that element beyond a reasonable doubt? So what authority do you think there is for the trial judge making a determination outside of the presence of the jury as to whether or not that evidence would come in? I think that in twine there's a discussion of this as well as in Frisbee. And twine relied upon Frisbee to a great degree. And it said that the district court needs to do a careful analysis of this issue as to whether it comes in or not. So even in Gold, which was talked about in a D.C. circuit case, which was talked about in twine and referred to, the district court did a careful analysis. And, in fact, in that case, the defense attorney kind of vacillated on what exactly the diminished capacity, what form it would manifest itself. But the district court saw and determined that it was appropriate for it to come in. So you concede that the district judge should have the ability to act as a gatekeeper and decide whether or not the evidence would be presented to the jury? I absolutely do think that that's a good argument. Your position is that he didn't do that. Let me just understand your position. Your position is he didn't do that appropriately because he viewed the crime as only a general intent crime so that the evidence was really not probative of anything. I think, yeah, I think Judge Haddon was clear. That was the discrete issue. He inquired, I think, out of curiosity. He didn't comment on whether my explanation sufficed or not. And, frankly, I was caught off guard and probably didn't provide as nuanced an explanation as possibly could have. Largely, in part, because that wasn't the issue before the court. It was just, is this specific or general? And, of course, the U.S. government in the district court level, they argued that it was general because of a possession statute, not the access with intent to view. If I could just go on to the one issue that I discussed a little bit in my 29J letter, which was this Henderson case, because I think it falls squarely here as well because this court can clearly see that in the excerpts of the record 585, Judge Haddon basically said that he must do that, apply the guideline without regard to whether the court agrees or disagrees with the guideline calculation process. And I think Henderson says that the district court can disagree with that process and policy and make its own decision of itself. If we agree with you on your first point, though, we don't even need to get to that, right? We're hoping you agree with us on the first point. No, I understand that, right. Absolutely. I just wanted a quick question because I know you want to reserve your time. The position that you're taking, it seems to me, opens a Pandora's box because basically, without getting to the whole world, any veteran that comes back as PTSD and many, many suffer from that malady, there's an effect of carte blanche to view child pornography to get a rush. What's wrong with that analysis? Well, if I may, first, the statute is the one. Congress enacted the statute that has this element. Second, we're stuck with the wars, whether we like it or not, and the consequences. And so if a vet comes back and they suffer from PTSD, they go to a counselor who diagnoses it and it's accurate, then the jury has to decide. It's like any other defense. Would you make the same argument with respect to rape? Or murder? I think you could make that argument. I think that a jury has to decide, and that's what we ask for. Let the jury decide. That's the whole point of this, I think, is to let a jury decide whether a person's guilty and whether the government has met its elements. And in this case, we think Mr. Wright should be able to present it. He didn't rape anybody. He didn't murder anybody. He didn't touch anybody. He's sitting in jail for nine years for hitting a button, and he wanted just a fair trial. Can I reserve the rest of my time, please? Thank you. Good morning. May it please the Court, Bishop Brewell on behalf of the United States. The issue before the Court this morning is whether the District Court abused its discretion when it granted the government's motion in Lemonet and barred Mr. Rice from introducing a testimony of his post-traumatic stress disorder or PTSD. Do you agree that he did it because he said that the crime was a general intent crime? Do I? I'm sorry, do I? Do you agree with your adversary that he did it on the ground that this was a general intent crime? I think it's quite clear that the District Court made its ruling based on the fact that it believed that this was a general intent crime. It pointed out that this was not a specific intent crime on the definition of specific intent, that specific intent means specific intent to violate the law. That's part of the reason that specific intent and general intent are often not useful, as the Supreme Court noted back in 1980 in U.S. v. Bailey, because there are so many definitions to the different terms. I think what those two terms are used to do is basically help us get to this ultimate question of whether a particular defense, in fact, negates the mens rea required here. And that's why we've focused on the specific question of whether it negates the mens rea here. I think it's quite clear that it does not, because Mr. Rice, at the Motion to Eliminate hearing, his counsel explained that what he was going to do was introduce this testimony that he needed this adrenaline rush, and the only way he could get this adrenaline rush was through the viewing of the child pornography, and it was because of his PTSD that he, quote, lacked the ability to control himself on this matter. Now, there are the confusing terms about what's diminished capacity, partial diminished capacity, all that. What is most certainly clear from the case law, especially the Cameron decision from the 11th Circuit that we cited, is that a defense that you lack self-control is not a permissible defense under the Insanity Defense Reform Act. Cameron said quite clearly that, in passing the Insanity Defense Reform Act, it is clear Congress meant to eliminate any form of legal excuse based upon one's lack of volitional control. Here, it's quite clear that the expert was not going to testify that he didn't have the intent to seek out and view child pornography, but rather that he intended to excuse his actions by his lack of self-control, which is not permitted. I think that's clear, both in the record at ER449, what Mr. Rice's counsel said the expert would testify to when asked by the district court. I think it's further clear by Mr. Rice's own admissions that he searched on these terms, 8-year-old, pedophile, kid porn, that he downloaded 70 to 80 images that they would find on his computer and that he watched 25 to 30 videos. May I ask this question, counsel? As I look at the briefs, particularly your red brief at page 28, it seems to me to some degree that the government seems to almost agree with a little bit of what the defense is indicating. Specifically, you said the phrase with intent to view does no more than ensure a conviction will occur only when the defendant meant to view the child pornography. Isn't that the same argument that counsel for the defendant has argued here? I think it's different in this matter. When we talk about intent, again, as the Supreme Court and this Court have noted, often what we sort of think corresponds closely to knowingly. And so one of the defenses to knowingly doing something, one of the permissible defenses is that it was an accident. You didn't mean to do it. And that would be a defense even if you had a general intent in knowingly crime. So that's what we mean that the language meant to do goes to. In other words, you're saying meant means knowingly and has its own series of cases, right? We think it's analogous, yes, analogous to that. But it's knowingly accessed with intent to view is what the statute says. Certainly. And I would concede that if I were sitting in your position, the intent to view language set by itself, that would probably indicate specific intent to me. So if that's the case, and I must confess, I'm struggling with the drafting of this particular statute. But what's wrong with having the district judge as a gatekeeper make a determination? Let's assume for a moment that it is a crime of specific intent. What's wrong with sending it back to the district court to make a determination in the first instance whether if it is a crime of specific intent, whether PTSD meets the requirement to negate intent, and therefore something that should be put to the jury? Right. And I think my response to that is partially this point. He said both at his motion in the May hearing, this is what my expert would testify to. There's all this evidence suggesting it's quite clear he intended to view it. The argument that counsel has already made this morning is that, well, he wanted this adrenaline rush, but he's really trying to get at that by viewing child pornography. And I understand the point that it may not make it. I mean, I'm not suggesting that PTSD is going to qualify here. But if I can use perhaps a bad analogy, is this almost like a Daubert approach here, where the government is conceding that intent is a specific intent crime, and then the district judge then analyzes in camera what it is the defense wants to put on and make a determination whether there's enough to back it up that it would even go to the jury. I'm not sure that works, but I think that's kind of what maybe makes some sense here. I think my response is that, first of all, as this Court knows, it can affirm on any grounds in the record, regardless of whether the district. And we think it makes sense to affirm on the grounds that he couldn't have got it in anyway under the Insanity Defense Reform Act for two reasons. First of all, we did raise it. We did not highlight it in our initial motion, but we did raise it in our initial motion. At ER 30, we said, in addition, 18 U.S.C. Section 17 clearly states that beyond an insanity defense, mental disease or defect does not constitute a defense. Then at the motion eliminating hearing, that was the argument that we highlighted. As I think this is quite clear, if you look at ER 446 and ER 450, the Assistant U.S. Attorney was making the point quite clearly that even if this is specific intent, it doesn't come in because it doesn't indicate the mens rea. So let me be sure I understand the government's position then. If I'm hearing you correctly, you are in effect conceding that this is probably a crime of specific intent, but having said that, that this is akin to the insanity defense in this kind of a situation. It wouldn't work. It's not going anywhere, and therefore he loses. Right, and the reason we think you should affirm on those grounds is because we already have a conviction here, and you'd essentially be overturning a conviction, ordering a new trial based on an argument that could never come in as a matter of law anyway and would not be allowed in at a second trial. And so the defendant has not been prejudiced by this. Let me make sure I understand. This is kind of tricky. The statute is access pornography with an intent to view. Knowingly accessed with an intent to view. Knowingly accessed with intent to view. Now, it seems to me that those are two different things. One is knowingly accessing the pornography. You can punch the buttons, and you can intend to get the pornography channel. But you may do that for any number of reasons. You may do that in order to see whether that's the pornography channel so you can block it, or you can see whether this person is still in operation transmitting pornography. I mean, you could knowingly access without an intent to actually view it. Correct. I think that's correct. I think that's correct because they seem to be two different things. So if you want to make sense of every word of the statute. I would agree with you on that. Okay. So then you get the intent to view, and your position is, with respect to that, that this evidence would not affect that determination? Is that it? My position is that even if you decide this is a specific intent crime, that what he has said he is going to offer is quite clear. He does not negate his misread. He basically admits that I intended to look at this. I intended to look at this child pornography. The reason I intended to look at it was that I wanted to get this adrenaline rush. And that is the sort of volitional control argument, the excuse argument, that in Cameron and in Pollat they've made clear the Insanity Defense Reform Act does not allow you to get into evidence. If it decided anything, it's that a volitional control, that you lack the self-control argument, that is the one argument you most certainly cannot get in under Insanity Defense Reform Act. That's the argument he's put forth, and that's the argument in the final thing with my last 17 seconds. He submitted a letter from the expert at ER-227, ER-399, in support of his motion for release, where the expert repeatedly points out, acknowledges his efforts to view child pornography, his efforts to seek adrenaline, seek other adrenaline producing. It's not that he didn't seek this out, that he didn't intend to view it. It's that because he couldn't control himself, that his PTSD, he should be able to go free, and that's simply not the case under the Act. Okay. Are there any further questions? Thank you. Thank you. Thank you. Andrew Rice deserves better than allowing the United States to not raise an issue below and say because it was touched upon in some general way, he doesn't get to raise it, at least have the Court as a gatekeeper. The United States did not raise this below. If they had raised it below, we would have had Kelly Remus testify in front of Judge Haddon and explicitly state what he was going to testify and let Judge Haddon decide. This is a tangential issue that was not addressed, was not raised. Is that a question of law? I think it's a question of fact. I think it's a question of fact whether this was developed below. No, no, I don't mean that. I mean whether this is an issue that really goes to any element of the crime. I think— You used the word tangential, but I'm— I guess what I'm trying to say, and I'm hoping I understood the question, is what I'm trying to say is that the issue of whether that volitional control, as was discussed, serves and is allowed under diminished capacity, that may very well be a question of law. But what I'm trying to say is that the facts weren't developed below to allow it to be simply a question of law. But there was a brief filed by the government, which I believe you also responded to, called Briefing Board of Government's Motion in Lemony to Bar Testimony at Trial, which examined pretty much what was indicated there. It was put to the district judge. He made a determination, I assume, because we can decide on any basis, that this was akin to the insanity defense, just as the government indicated. Why doesn't that take care of the gatekeeper function? Why didn't the district judge, in fact— even if he didn't think this was a crime of specific intent, if it was a crime of specific intent but it still had the same result, do we need to send that back? I think that the point is that the United States, at the hearing, said they didn't have enough information and we didn't even provide a report. So now they're saying below that there wasn't enough information to determine what the defense would be or what the expert would testify to, but now they're saying the record is complete and you can make a decision. And so— Wait a minute. I'm just looking at this. This is—I'm looking at this. Looks like it's a bait stamp anyway. 28 says, Rice's state of mind in mens rea evidence of diminished capacity is not admissible in a trial involving a general intent crime. Now, they're calling it a general intent crime. Maybe there's that distinction, but they then go on to talk about the very points that have been made today. So I guess what I'm struggling with is the government seems to concede that this is perhaps a crime of specific intent as far as the intent part, but having conceded that, the reality is that we still have to deal as a matter of law whether you can get into evidence testimony about the PTSD. They claim it's very much like the insanity defense where the law is pretty clear about that. Would you agree with that? I would agree with that, but before you can get to whether as a matter of law this is appropriate, the facts have to be developed below, and I just don't think they were. To just refresh my recollection, I thought that you made a proffer as to what your expert would say. I certainly did, and I've reviewed that and tortured myself after I've read that a number of times because I wasn't prepared. I should have stated that on the record. But more importantly, I didn't have Kelly Rumis there to say in his own words what he would testify to. But bottom line, though, is, counsel, the government presented its position on the PTSD. You presented your position. You made a proffer. The district judge, even though for a moment, let's say he was wrong about whether this was a crime of general intent, the district court did in fact act as a gatekeeper, made a determination that this evidence couldn't come in. What would change? If we sent this back to the district court and said, you've got to treat this as a crime of specific intent, make your determination with respect to whether this can come in, is there any doubt in your mind that Judge Haddon would do the same thing all over again? I think that what would be different is that I would present Kelly Rumis to testify, and I think Kelly Rumis would say that Mr. Rice was seeking an adrenaline. But you said that, did you not? Right. But then the question becomes, if you seek adrenaline and if you're trying to seek adrenaline, you hit that button, the knowingly element is that you hit that button, and when you hit that button to seek that adrenaline, are you intending to view? Where are you getting the adrenaline rush from? The PTSD. No. You have the PTSD. No, but something has to trigger it. So isn't it the viewing? I guess. It isn't pushing the button, surely. Well, what I'm saying is he wants to look at that. He wants to look. But he didn't intend to look at the images. He intended to get the rush. That's where the intent comes in. What did you intend to do? Did you intend to look at little kids doing horrible things, or did you intend to get an adrenaline rush? And maybe they're one and the same. Maybe I'm completely wrong about that. But I think Judge Haddon deserved and should have been able to make that decision, and certainly Andy Rice had the right to have a gatekeeper analyze that in those terms. So your point is that Mr. Rice was not given the opportunity to adequately develop the evidence as to whether or not PTSD should come in as a defense before Judge Haddon. And I think that's why the record is as it is, because Judge Haddon just had the discrete issue, is it specific in general, and then because of that. And that was pretty much what the government's brief in support of the motion to bar testimony pretty much focuses on the issue that this was a general intent crime as opposed to a specific intent offense. That's what my reading of it is. I think that's the sole issue. Okay. I think we understand. Thank you very much. Thank you. The matter just argued is submitted for decision.
judges: Benitez, Schroeder, Smith M.